UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY KECK,

    Plaintiff,

v.                                                     Case No. 06-13438

LIBERTY MUTUAL/LIBERTY LIFE        Honorable Patrick J. Duggan
ASSURANCE CO. OF BOSTON,

    Defendant.
    _____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT AND DENYING PLAINTIFF'S MOTION TO DECLARE VOID DEFENDANT'S DENIAL OF DISABILITY BENEFITS AND TO ORDER REINSTATEMENT OF BENEFITS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 10, 2007.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

Kelly Keck ("Ms. Keck") filed this lawsuit against the Liberty Mutual Insurance Company ("Liberty Mutual") and Liberty Life Assurance Company of Boston ("Liberty Life"), seeking long term disability ("LTD") benefits under an insurance plan provided by Liberty Mutual, Ms. Keck's former employer. Liberty Life is the insurer for benefits under the LTD plan and the plan administrator. Ms. Keck asserts her claim for benefits

under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132.[1]

Liberty Mutual initially awarded Ms. Keck LTD benefits. On November 30, 2005, Liberty Life determined that Ms. Keck no longer was eligible for benefits effective December 1, 2005. Liberty Life affirmed its decision on appeal on January 25, 2006. Ms. Keck filed this lawsuit on July 31, 2006. On June 18, 2007, Ms. Keck filed a motion asking the Court to reverse the administrator's decision and reinstate her disability benefits. On the same date, Liberty Life filed a motion for judgment on the administrative record. The parties filed response briefs on July 27, 2007. Liberty Life filed a reply brief on August 10, 2007. Having reviewed the briefs filed in support of and in opposition to these motions, the Court sees no need for oral argument and therefore is dispensing with oral argument in accordance with Local Rule 7.1(e)(2). For the reasons set forth below, Liberty Life's motion shall be granted and Ms. Keck's motion shall be denied.

## FACTUAL BACKGROUND

Ms. Keck was a participant in the Liberty Mutual Short Term Disability ("STD") Plan and Liberty Mutual LTD Plan as a result of her employment as a customer service representative with Liberty Mutual. Liberty Life is the insurer and administrator of both plans. On or about January 27, 2004, Ms. Keck submitted a claim for STD benefits due to pain in her back and foot. (McGee Decl. ¶ 5; AR LL-0062.)

---

[1] In her complaint, Ms. Keck also asserted claims for breach of fiduciary duty and for violation of the Michigan Consumer Protection Act. This Court dismissed those claims in an opinion and order entered on November 17, 2006.

2

Liberty Life thereafter approved Ms. Keck's application for STD benefits and she received benefits through July 24, 2004, the expiration of the 26-week maximum period applicable under the STD plan. (McGee Decl. ¶ 6.) Liberty Life thereafter evaluated Ms. Keck's eligibility for benefits under the LTD plan. The LTD plan defines "disability" or "disabled" in pertinent part as follows:

> i) If the Covered Person is eligible for the 18 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period[2] and the next 18 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and
>
> ii) After 18 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

(AR LL-0006.)

In order to evaluate Ms. Keck's eligibility for LTD benefits, Liberty Life requested medical information from her treating physicians. According to that information, in February 2004, an MRI of Ms. Keck's spine revealed a moderate sized disk herniation at L4-L5, a small central annular tear or fissure at this level, moderate central spinal stenosis, and effacement of the anterior thecal sac. (AR LL-0703.) Ms. Keck subsequently was evaluated by a neurologist and pain management specialists. After pain

---

[2]The plan defines the Elimination Period as "[t]he greater of: a. the end of the Covered Person's Short Term Disability Benefits; or b. 180 days." (AR LL-0003.)

medication and epidural injections failed to relieve Ms. Keck of her pain, a neurologist recommended surgery. (*See* AR LL-0603 to LL-0604.) Dr. Joseph Schnittker performed a microdiscectomy on Ms. Keck on July 15, 2004.

Based on the above information, on July 26, 2004, Liberty Life informed Ms. Keck that it had approved her claim for LTD benefits. During the next eighteen months, Liberty Life continued to provide LTD benefits to Ms. Keck based on information and records it received from Dr. Schnittker concerning his follow-up treatment of Ms. Keck.

In March 2005, Ms. Keck underwent additional back surgery which was performed by Dr. Gary Lam. (AR LL-0356.) Ms. Keck had left carpal tunnel release surgery on July 19, 2005, which was performed by Dr. C.W. Erekson. On August 29, 2005, Dr. Lam completed a Liberty Mutual Functional Capacities Form, which he submitted to Liberty Life. (AR LL-0251.) On this form, Dr. Lam lists Ms. Keck's diagnosis and concurrent conditions as degenerative disc disease, facet arthrosis, and radicolitis. (*Id.*) He further indicates that Ms. Keck has been off work since her March 2005 surgery and that her work status would be discussed at her next office visit on August 30, 2005. (*Id.*) Dr. Erekson completed a Liberty Mutual Restrictions Form on August 29, 2005, which he submitted to Liberty Life. (AR LL-0252.) On this form, Dr. Erekson indicated that Ms. Keck had done well after her carpal tunnel release surgery and was to return to work with regular duties on August 2, 2005. (*Id.*)

On September 27, 2005, Liberty Life sent Ms. Keck a letter advising her of the change in the definition of disability under the LTD plan that would occur on January 24, 2006– after 18 months of receiving benefits. (AR LL-0221.) Liberty Life informed Ms.

4

Keck: "To remain eligible for benefits beyond the 18th month, you must be disabled from any occupation . . ." (*Id.*) Liberty Life advised Ms. Keck that it was gathering information to assess her continued eligibility for LTD benefits beyond that date. (*Id.*)

After receiving additional records from Ms. Keck's medical providers, Liberty Life decided to submit her file for independent peer review. For this purpose, Liberty Life forwarded Ms. Keck's file to M.L.S. National Medical Evaluations ("MLS") and requested reviews by a physician specializing in orthopedic surgery and a physician specializing in physical medicine and rehabilitation. (AR LL-0215.) Liberty Life further requested that the reviewing physicians answer two specific questions: (1) What are the recommended restrictions/limitations for Ms. Keck; and (2) Can Ms. Keck function in at least a full-time sedentary capacity with the ability to change positions as needed for comfort. (*Id.*) MLS subsequently assigned Ms. Keck's case to Dr. L. Neena Madireddi, a specialist in physical medicine and rehabilitation, and Dr. Isaac Cohen, an orthopedic surgeon.

On November 1, 2005, a representative from MLS sent an email to Liberty Life, asking whether the two reviewing physicians may speak to one another:

> Both reviews on this case are dictated and we have gone back to both of the reviewing physicians for clarification. At this point, we feel that we may need the two reviewing physicians to speak to each other. Would we have permission to have this done? . . .

(AR LL-0157.) A representative from Liberty Life responded: "Absolutely! It would be better to have a consensus of opinion to assist with further case management." (*Id.*) Thereafter, Liberty Life received reports from Dr. Madireddi and Dr. Cohen.

5

In his report, dated October 19, 2005, Dr. Cohen noted that "Ms. Keck has an extensive medical and surgical history with continued subjective complaints despite the treatment and surgeries provided." (AR at LL-0178.) He further noted, however, that "[t]he objective medical findings support that her cervical spine complaints appear to be stable." (*Id*.) Dr. Cohen indicated that, although the description of Ms. Keck's exact back complaints are vague in nature, she is subject to some restrictions in her functional capabilities due to her numerous surgical procedures. (*Id*. at LL-0179.) Specifically, Dr. Cohen identified the following restrictions:

> . . . lifting and/or carrying up to 20 pounds occasionally and ten pounds frequently. Likewise, pushing and/or pulling would be restricted to 20 pounds maximum. Activities including stooping, twisting and bending at the waist would be restricted to an occasional basis up to 15 minutes repetitively at a time. Ms. Keck would be able to walk up to one hour at a particular time, up to four hours in total out of an eight-hour workday. Likewise, with static standing activities, Ms. Keck would be able to stand up to one hour at a particular time for a total of four hours out of an eight-hour workday. There are no restrictions in regards to the duration of sitting activities; however, she should be afforded the opportunity to change positions when necessary and have formal breaks at a frequency of every one hour if she needs to get up in order to relieve any discomfort or stiffness. Due to the postoperative nature of her cervical spine, she would be restricted in reaching above shoulder level to an occasional basis with no restrictions in reaching at or below shoulder level. Ms. Keck would have no further restrictions relating to upper extremity activity, including that of handling, fine finger dexterity, grasping, gripping, handling, typing and writing.

(*Id*. at LL-0179 to LL-0180.) In conclusion, Dr. Cohen found nothing in the available medical evidence to support Ms. Keck's inability to function in at least a full-time

sedentary capacity with the ability to change positions as needed for comfort. (*Id*. at LL-0180.)

In her report, dated October 17, 2005, Dr. Madireddi likewise concluded that the multiple surgical procedures performed in relation to Ms. Keck's lower back support some restrictions on her activities. (AR at LL-0210.) The restrictions Dr. Madireddi outlined are almost identical to those set forth in Dr. Cohen's report. (*Id*.) Like Dr. Cohen, Dr. Madireddi also concluded that these restrictions are consistent with a full-time sedentary position providing the ability to change positions as needed for comfort. (*Id*. at LL-0212.)

After receiving Dr. Madireddi's and Dr. Cohen's reports, Liberty Life referred Ms. Keck's file to its vocational rehabilitation department, along with information describing Ms. Keck's customer service representative position. (AR LL-015.) Liberty Life asked its vocational rehabilitation department to advise whether Ms. Keck could perform the position as it is normally performed at Liberty Mutual and in the national economy, based on the restrictions and limitations outlined by Dr. Madireddi and Dr. Cohen. (*Id*.) On November 22, 2005, a vocational case manager prepared a summary in which she concluded that Ms. Keck is capable of performing the position. (AR at LL-0153.)

Liberty Life sent a letter to Ms. Keck on November 30, 2005, informing her that, based on the medical information in her file, it had determined that she is capable of performing her job with Liberty Mutual or the same occupation with a different employer and that she therefore no longer met the definition of disability under the LTD plan. (AR at LL-0146 to LL-0151.) In this letter, Liberty Life summarized the documentation on

which it relied to make its determination and then informed Ms. Keck that, in light of its determination, it would stop paying her LTD benefits effective December 1, 2005. (*Id*.) Liberty Life further informed Ms. Keck of her right under ERISA to request a review of its denial and advised her that, if she appealed the decision, she "must . . . state the reasons why you feel your claim should not have been denied" and "include documents such as test results, consultations, and any other claim specific information which you feel will support your claim." (*Id*. at LL-0150.)

In a letter dated December 26, 2005, Ms. Keck informed Liberty Life that she was appealing the decision in her case. (AR LL-0082.) Although Ms. Keck did not state why she felt Liberty Life's decision was incorrect, she did attach a number of medical records to support her appeal:

- Dr. Lam's notes from an office visit on 8/30/05;

- A radiology report from Elkhart General Hospital regarding a bone scan on 8/31/05;

- Dr. Joan K. Szynal's notes from a 9/6/05 examination and bilateral EMG and nerve conduction studies and the results of those studies;

- A radiology report from Elkhart General Hospital regarding a Mylogram on 9/7/05;

- Dr. Lam's notes from an office visit on 9/12/05;

- Office Visit Notes from Dr. Scott J. Trumble (an orthopedist specializing in feet) on 9/13/05;

- Various test results from the South Bend Medical Foundation reported on 9/15/05 through 9/18/05;

- A Chronic Pain Therapy Record from Elkhart

8

regarding Caudal Epidural procedures on 9/26/05 and 10/18/05;

- Dr. Lam's notes of an office visit on 10/10/05;

- Consultation notes from Dr. T.R. Vidic (a neurologist) dated 10/11/2005;

- Notes regarding pool therapy in 11/05 and 12/05;

- Record from visit with Dr. Woodward on 11/15/05;

- Office Visit Notes from Dr. Jarrod D. Friedman (a pain management specialist) on 12/2/05.

(AR LL-0081 to LL-0140.)

Liberty Life thereafter referred Ms. Keck's file to its appeals unit. On January 25, 2006, Lisa Gray, an appeal review consultant, recommended upholding the denial of Ms. Keck's LTD benefits. (AR LL-0073 to LL-0075.) As a basis for her recommendation, Ms. Gray noted Dr. Madireddi's and Dr. Cohen's assessment that Ms. Keck is able to function in a full-time sedentary capacity and the vocational case manager's conclusion that there are ample positions (including Ms. Keck's customer service representative position) in the national economy that fall within Ms. Keck's capabilities. (*Id.*) With respect to the additional medical information Ms. Keck attached to her appeal letter, Ms. Gray indicated:

> The information submitted on appeal was already contained in the file prior to the original denial. These records were reviewed and considered in the peer reviewer's final assessments. Because these records were considered in rendering the denial there is no need to have any further medical reviews conducted. The reviews conducted prior to denial were both by physicians specializing in the claimant's conditions.

9

(AR LL-0075.)

Ms. Gray sent a letter to Ms. Keck, dated January 25, 2006, informing her of Liberty Life's decision to affirm its denial of benefits effective December 1, 2005. (AR LL-0076.) Ms. Gray explained: "While we recognize that you continue to complain of pain, the totality of medical and vocational documentation reviewed does not substantiate that you are disabled from performing your own occupation within your vocational capacity." (*Id*.) Although noting that a review of all medical data in Ms. Keck's file from her treating physicians and the two independent reviews indicates that she has the diagnosis of degenerative disc disease and musculoskeletal pain, Ms. Gray wrote that "the degree and severity of your impairment would not prevent you from performing your own occupation." (*Id*.) Ms. Keck explained further:

> Although you continue to report subjective complaints of body pain, the medical and clinical evidence on file does not establish that your reported impairments are not [sic] of a nature and severity which would preclude you from performing the material and substantial duties of your own occupation. The medical evidence indicates you obtained little improvement with the treatment provided from the subjective viewpoint, however, objective examination demonstrated that the most recent MRI revealed the presence of postoperative changes with no convincing objective findings. The procedures performed indicate that improvement has been made. Your treating physicians as well as the independent peer reviewers all write you have a complicated medical and surgical history for which you continue to report subjective complaints of pain. However, the available medical evidence on file does not document findings to support your inability to function within such a capacity on a sustainable fulltime basis. The restrictions and limitations contained in your file are consistent with your ability to function within the level of a sedentary capacity.

10

(AR LL-0077.) With respect to the information Ms. Keck submitted in support of her appeal, Ms. Gray wrote: "the information . . . was already contained in your file prior to the November 30, 2005 denial. This information was reviewed and considered in rendering the denial of your long-term disability benefits." (*Id.*)

Ms. Keck thereafter filed this action on July 31, 2006.

## STANDARD OF REVIEW

The standard of review of a denial of ERISA benefits depends on the language of the plan itself. If the plan vests discretionary authority in the administrator or fiduciary to determine eligibility for benefits or to construe the terms of the plan, the denial may be reversed only upon a showing that the decision was "arbitrary and capricious." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989). The Liberty Mutual LTD Plan clearly grants Liberty Life discretionary authority to determine Ms. Keck's eligibility for benefits and construe the terms of the plan. (AR LL-0024.) Ms. Keck and Liberty Life in fact agree that the arbitrary and capricious standard applies in this case. (Pl.'s Br. in Supp. of Mot. at 15; Def.'s Br. in Supp. of Mot. at 11-12.) Therefore, the Court will proceed under that standard.

Under this deferential standard of review, a court must uphold a benefit determination if it is "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). "Stated differently, '[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839,

11

846 (6th Cir. 2000) (quoting *Davis v. Kentucky Finance Co. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). A court's review is limited to "the facts known to the plan administrator at the time he made the decision." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991); *see also*, *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433-34 (6th Cir. 1998).

## ANALYSIS

Liberty Life's decision to deny Ms. Keck continued LTD benefits appears rational in light of the LTD Plan's provisions and the available medical evidence. Although Ms. Keck reported severe pain, her treating physicians were unable to identify the origin of her pain. For example, based on various tests, Dr. Szynal found no evidence of any significant radiculopathy on September 6, 2005. (AR LL-0090.) On September 13, 2005, Dr. Trumble comments that he does not "have a mechanical reason to explain [Ms. Keck's] level of diffuse foot pain." (AR LL-0104.) Dr. Friedman reported on December 2, 2005, that "[i]t is hard to discern the origin of [Ms. Keck's] pain issues . . . because of the severity and non-focal nature of the pain. (AR LL-0138.) Although Dr. Lam concluded on December 12, 2005 that, due to her significant pain, Ms. Keck still was incapable of returning to work, he was not able to identify a source for her pain. (Pl.'s Mot. Ex. 3.)

The most recent tests performed on Ms. Keck failed to provide a source for her pain. Specifically, the MRI performed on August 17, 2005, identified "no convincing focal disk herniation or nerve root compression." (AR LL-0259.) X-rays of the lumbar spine on August 11, 2005 showed "good alignment, instrumentation in good placement..."

12

(AR LL-0297.) Although a CT scan on September 7, 2005 showed minor degenerative changes and some disk herniation, the report further indicates that there was "[n]o definite disk herniation" and "[n]o significant compromise of the thecal sac." (AR LL-0094.)

The Sixth Circuit has held that an administrator does not act arbitrarily in denying a claim where the evidence includes subjective complaints of pain but no objective medical evidence to support the claimant's symptoms. *See, e.g., Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381-82 (6th Cir. 1996) (holding that the administrator did not act arbitrarily in discounting the claimant's subjective complaints of pain, noting that such complaints "are easy to make, but impossible to refute"); *Oody v. Kimberly-Clark Corp. Pension Plan*, 215 Fed. App'x 447, 453 (6th Cir. 2007) (holding that the administrator did not act arbitrarily when evidence included subjective complaints and some medical evidence but not "sufficient objective medical evidence"); *Nichols v. Unum Life Ins. Co. of Am.*, 192 Fed. App'x 498, 504 (6th Cir. 2006) (holding that the administrator did not act arbitrarily in finding that the claimant's treating physician's assessment "was largely based on her acceptance of [the claimant's] description of her medical conditions [neck, arm, and back pain], rather than based on an objective assessment of [the claimant's] medical history"). In concluding that Ms. Keck was incapable of returning to work, Dr. Lam apparently relied on Ms. Keck's complaints of pain, as he found– like several other treating physicians– no objective evidence to explain the origin of her pain. In fact, Dr. Lam failed to explain why he concluded that Ms. Keck could not return to her full-time sedentary position. Similiarly, neither Dr. Lam nor any of Ms. Keck's other treating physicians contradicted Dr. Madireddi's and Dr. Cohen's

13

assessment that Ms. Keck retained the functional capacity to perform full-time sedentary work. Notably, it was Ms. Keck's burden to present such proof.

Ms. Keck nevertheless contends that Liberty Life acted arbitrarily and capriciously because it operated under a conflict of interest. As Ms. Keck notes, Liberty Life is the insurer and administrator of the LTD plan and its affiliate, Liberty Mutual, was Ms. Keck's employer and the plan sponsor. Under these circumstances, "there is an actual, readily apparent conflict . . ., not a mere potential one." *Killian v. Healthsource Provident Adm'r, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (finding an actual conflict of interest where the same entity interpreted the plan and decided what expenses were covered in its role as administrator and funded the plan in its role as the issuer). The existence of a conflict of interest does not change the standard of review; however, the Sixth Circuit has advised courts to be "particularly vigilant in situations where . . . the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims." *Univ. Hosp. of Cleveland*, 202 F.3d at 846 n. 4. As the court further noted: "Under these circumstances, the potential for self-interested decision-making is evident." *Id*.

In order to demonstrate that Liberty Life's conflict of interest in fact caused it to act arbitrarily and capriciously, Ms. Keck contends that Liberty Life failed to consider all of the available information relative to her disability. Specifically, Ms. Keck contends that Liberty Life failed to consider the medical records she submitted to support her appeal. She points to the statement of Liberty Life's appeal review consultant that the information already was contained in her file and was considered before Liberty Life

rendered its initial decision, arguing that this was impossible because the records post-dated that decision. Ms. Keck also claims that she informed a representative of Liberty Life that she intended to submit additional medical information in support of her appeal as soon as the information became available– specifically Dr. Lam's notes regarding her office visit on December 12, 2005 (*see* Pl.'s Mot. Ex. 3)– but that Liberty Life closed her appeal before she had the opportunity to submit the information.

Ms. Keck claims that Liberty Life's conflict of interest also led it to rely solely on the peer review opinions of two doctors chosen by an organization (MLS) "whose sole stock in trade is to assist insurance companies in effective case management." (Pl.'s Br. in Supp. of Mot. at 16.) Ms. Keck argues that it was arbitrary and capricious for Liberty Life to rely on the peer reviewers' opinions because those physicians neither examined her nor spoke with her treating physicians and because, she asserts, they reached a result contrary to the opinions of her treating physicians. Finally, Ms. Keck claims that Liberty Life's decision was arbitrary and capricious because Dr. Madireddi and Dr. Cohen failed to address her current psychological state or its impact on her ability to work.

With respect to the additional information Ms. Keck provided Liberty Life in support of her appeal, this Court cannot conclude that Liberty Life failed to consider the information. First, most of the medical records Ms. Keck submitted with her appeal letter (significantly the results of Ms. Keck's recent MRI, bone scan, and lumbar myelogram) in fact were contained in her file before Liberty Life made its initial decision to deny her benefits and were considered by Dr. Madireddi and Dr. Cohen. (*See, e.g.,* AR LL-0172 to LL-0173.)

Second, the appeals review consultant did not state that all of the *medical records* that Ms. Keck submitted in support of her appeal already were contained in her file before Liberty Life reached its decision. Instead, the appeals review consultant simply indicated that *the information* that Ms. Keck submitted on appeal already was in her file and had been reviewed and considered. (AR LL-0075.) Specifically, as the appeals review consultant found, the medical records Ms. Keck submitted on appeal did not provide any new information regarding a medical or clinical explanation for Ms. Keck's subjective complaints of pain. (AR LL-0032 to LL-0033; AR LL-0077.) In other words, the medical records attached to Ms. Keck's appeal letter, like those submitted before Liberty Life reached its initial decision, report Ms. Keck's continued complaints of pain. However, in those records, Ms. Keck's treating physicians still are not able to identify the source of her pain. Notably, none of the records that Ms. Keck submitted on appeal contradict Dr. Madireddi's and Dr. Cohen's assessment that Ms. Keck retained the functional capacity to perform full-time sedentary work.

With respect to the Office Visit Notes from Ms. Keck's visit with Dr. Lam on December 12, 2005, this Court's review of Liberty Life's determination is limited to the material and evidence available to Liberty Life at the time of its decision. *Miller v. Metro. Life Ins. Co.*, 952 F.2d 979, 986 (6th Cir. 1991). To the extent Ms. Keck attempts to show that the appeals process was flawed because Liberty Life failed to afford her the opportunity to submit the office notes, the Court finds no merit to her claim. In her December 26, 2005 appeal letter, Ms. Keck specifically identified documentation that she was submitting to support her appeal. (AR LL-0082.) Nevertheless, and although she

16

wrote her letter two weeks after the office visit with Dr. Lam, Ms. Keck never indicated that she intended to submit further documentation from that visit. Moreover, Ms. Keck fails to explain why she never submitted the notes over the next several weeks before Liberty Life rendered its decision on January 25, 2006. In any event. although Dr. Lam indicates in these notes that Ms. Keck "still is unable to return to work," he fails to explain why she cannot work and he does not identify any medical explanation for her subjective complaints. (Pl.'s Mot. Ex. 3.) Therefore, the notes do not demonstrate– or even suggest– that Liberty Life's initial decision was incorrect.

There also is no merit to Ms. Keck's claim that Liberty Life's decision was arbitrary and capricious because it was based on the opinion of non-treating physicians. The "treating physician rule" applicable in the social security context is not applicable in ERISA cases. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S. Ct. 1965 (2003). There is no evidence that Dr. Madireddi or Dr. Cohen ignored the opinions of Ms. Keck's treating physicians. Both doctors specifically identify records they reviewed from Ms. Keck's doctors. Moreover, as stated previously, Dr. Madireddi's and Dr. Cohen's opinion that Ms. Keck retained functional capabilities enabling her to perform full-time sedentary work is not contradicted by her treating physicians. Ms. Keck's treating physicians never provided information in response to Liberty Life's requests for information regarding Ms. Keck's specific restrictions and limitations. (*See, e.g.*, AR LL-0403 to LL-0408.) Both Dr. Lam and Dr. Erekson failed to complete the portion of Liberty Mutual's form that asked for their opinion regarding Ms. Keck's functional capacity. (AR LL-0251; AR LL-0253.)

Finally, Ms. Keck cannot establish that Liberty Life's decision was arbitrary and capricious based on her argument that Dr. Madireddi and Dr. Cohen failed to consider the impact of her psychological state on her ability to work. As an initial matter, Dr. Madireddi and Dr. Cohen both noted their review of medical information concerning Ms. Keck's psychological condition. (*See, e.g.,* AR LL-0163, LL-0174 to LL-0175, LL-0188 to LL-0189, LL-0194.) However, Ms. Keck never claimed during the administrative review process that she was disabled due to any psychological issues. Instead, Ms. Keck and her treating physicians asserted that she was unable to work due to specified physical conditions: foot pain, back pain, and carpal tunnel syndrome. (AR LL-0250 to LL-0253; LL-0306.)

## CONCLUSION

In conclusion, this Court finds that Liberty Life has offered a "reasoned explanation, based on evidence" for its denial of Ms. Keck's disability benefits under the LTD policy. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997). Ms. Keck fails to offer a reason for the Court to conclude that this decision was arbitrary and capricious. The Court therefore affirms Liberty Life's decision to deny Ms. Keck LTD benefits. Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Entry of Judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Motion to Declare Void Liberty Mutual/Liberty Life Assurance Company of Boston's Denial of Continuing Disability Benefits and to Order Reinstatement of Benefits is **DENIED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT

Copies to:
David B. Grant, Esq.
James P. Hollihan, Esq.